UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-tp-80008-AMC

UNITED STATES OF AMERICA,

vs.

ANTONIO CHARLES,

        Defendant.

_____/

## REPORT AND RECOMMENDATION REGARDING SUPERVISED RELEASE VIOLATION

Antonio Charles is alleged to have committed two violations of his supervised release. Pursuant to Fed. R. Crim. P. 32.1(b)(2), I held a revocation hearing on the alleged violations on January 25, 2022. Mr. Charles was represented by counsel. After conferring with counsel, he admitted the second violation. He denied the first violation, so an evidentiary hearing was then held.

**Violation 1**

Violation 1 alleged that Mr. Charles committed a violation of state law on or about May 2, 2021, by fleeing and eluding from law enforcement in violation of Fla. Stat. 316.1935(3)(a).

The evidence at the hearing consisted of (1) testimony from Riviera Beach Police Officers Adolph, Ivory, and Kearney, (2) a map of the city of Riviera Beach, (3) video from dashboard cameras in Officer Adolph and Officer Kearney's vehicles, (4)

body camera video from Officer Adolph, and (5) Mr. Charles' Florida driver's license information and photograph.

The parties did not dispute, and the evidence at the hearing credibly and amply demonstrated, the following facts:

1. On May 2, 2021, at approximately 5:45 p.m., Riviera Beach Police Officer Adolph was on 30th Street just west of President Barack Obama Highway. His marked police vehicle was facing east, approximately 15 feet from the intersection. He saw a black Infiniti sedan pass in front of him, traveling southbound on President Barack Obama Highway. He noticed that the Infiniti had excessive window tint on the rear windows.

2. Officer Adolph turned onto President Barack Obama Highway heading south and activated his lights. As he did so, the Infiniti was turning right (west) onto 26th Street. As Officer Adolph turned onto 26th Street, the Infiniti drove away at a high rate of speed. The Infiniti went through the first intersection (Avenue M) without stopping. Officer Adolph stopped at the intersection. He then lost contact with the Infiniti. Officer Adolph gave dispatch a description and location for the fleeing vehicle.

3. The Infiniti was next seen by Riviera Beach Police Officer Ivory traveling westbound on 25th Street, having turned right off of southbound Avenue O. This location is one block south and one block west of where Officer Adolph last saw the Infiniti. Officer Ivory was two blocks to the west on 25th Street. He was in an unmarked vehicle conducting surveillance in an

unrelated investigation. He was parked on the south side of 25th Street facing east. The Infiniti approached him from the front, then passed to his left. The driver's window of the Infiniti was open. As the Infiniti passed the undercover vehicle, the driver was approximately three feet away from Officer Ivory. Officer Ivory saw that the driver was an African-American male with dreadlocks.

4. After passing Officer Ivory's vehicle, the Infiniti made the next left turn, which sent it southbound on Avenue Q toward 24th Street. Officer Ivory backed up and moved his car to the west side of Avenue Q between 24th and 25th Streets. He saw the Infiniti turn right (west) onto 24th Street, which was a dead-end road terminating in an open field. Officer Ivory saw the Infiniti go into the field, turn around, and then head west on 24th Street across Avenue Q at a high rate of speed.

5. As the Infiniti was turning around in the open field, Riviera Beach Police Officer Kearney came into the dead-end block of 24th Street. As he entered the block, the Infiniti sped past him on his left. As it passed, he was approximately three feet from the open driver's window. He noticed that the driver was an African-American male with dreadlocks.

6. Officer Ivory was parked approximately 20-30 feet north of the intersection of 24th Street and Avenue Q. As the Infiniti passed in front of him, he again saw that the driver was an African-American male with dreadlocks.

7. The Infiniti was not stopped on May 2, 2021.

> 8. Mr. Charles is an African-American male who had dreadlocks at the time of the evidentiary hearing.

It was not materially disputed (and I find) that whoever was driving the Infiniti violated Florida Statute 316.1935(3)(a). The sole disputed issue at the hearing was whether Mr. Charles was the driver. The Government's evidence of identity was:

> 1. Sometime after May 2, 2021, the Riviera Beach Police Department obtained information that suggested Mr. Charles was the owner of the Infiniti.
>
> 2. The police obtained a copy of Mr. Charles' driver's license photo. The photo depicts an African-American male with dreadlocks.
>
> 3. The driver's license photo was shown to Officer Ivory and Officer Kearney. Both identified Mr. Charles as the driver of the Infiniti.
>
> 4. Officer Ivory and Officer Kearney both also identified Mr. Charles in court as the driver of the Infiniti.

The Government argued that the out-of-court and in-court identifications were reliable. The defense argued that they were unreliable and based on an unduly suggestive process.

I agree with the defense. I find that the Government has not proven by a preponderance of the evidence that Mr. Charles was the driver of the Infiniti on May 2, 2021. In evaluating the evidence, I am particularly mindful of Eleventh Circuit Pattern Criminal Jury Instruction S3, which states:

> If a witness identifies a Defendant as the person who committed the crime, you must decide whether the witness is telling the truth.
> But even if you believe the witness is telling the truth, you must still

4

> decide how accurate the identification is. I suggest that you ask yourself questions:
>
> 1. Did the witness have an adequate opportunity to observe the person at the time the crime was committed?
>
> 2. How much time did the witness have to observe the person?
>
> 3. How close was the witness?
>
> 4. Did anything affect the witness's ability to see?
>
> 5. Did the witness know or see the person at an earlier time?
>
> You may also consider the circumstances of the identification of the Defendant, such as the way the Defendant was presented to the witness for identification and the length of time between the crime and the identification of the Defendant

Having had the opportunity to observe the demeanor of Officers Ivory and Kearney, I believe that they are telling the truth that they *think* Mr. Charles was driving the Infiniti. But, I conclude that their good faith belief does not establish by a preponderance of the evidence that they have accurately identified Mr. Charles as the driver.

The Officers did not have an adequate opportunity to observe and accurately identify Mr. Charles.  They observed a fast-moving car for a brief moment.  The dashboard camera video from Officer Kearney's vehicle (G. Ex. 3) does not reveal that he had a clear front view of the driver's face, although the camera did not capture the Infiniti as it passed the driver's window.  The Officers' contemporaneous description was simply "black male with dreds and a white t-shirt."  There were no other unique features such as scars, marks, tattoos, or distinctive facial hair.  Neither Officer testified to having interacted with Mr. Charles prior to, or after, May 2, 2021.

Also, the Officers' out-of-court identification was highly suggestive.  They were told that the photograph represented someone who the police believed was associated

5

with the Infiniti. They were shown only one photograph, not a multi-picture lineup. The record is ambiguous about how soon after May 2 they were shown the photograph. Taken together, these facts undercut the evidentiary value of the out-of-court identifications.

Officer Ivory's in-court identification is not entitled to weight. He identified Mr. Charles as the person driving the Infiniti even though Mr. Charles' nose, mouth, and chin were obscured by a mask. Officer Ivory did later identify Mr. Charles after he removed his mask. Nevertheless, (1) he had only ever seen Mr. Charles briefly eight months ago, (2) he identified the only black male with dreadlocks in the courtroom, (3) he identified the person who happened to be sitting at the defense table, and (4) he purported to be able to identify the defendant despite his face being obscured by a mask.

Apart from the suggestive nature of the identifications, there is other evidence that undercuts a finding that Mr. Charles was the person fleeing from police on May 2. First, there is no evidence in the record tying Mr. Charles to the Infiniti. Second, there is no direct evidence that in May 2021 he had dreadlocks. The driver's license photo appears to date from 2017. It shows a male with dark dreadlocks. Today, Mr. Charles has multi-colored dreadlocks. Although these facts create a circumstantial inference that he had dreadlocks in 2021, I do not find this inference strong enough to justify that conclusion by a preponderance of the evidence. Finally, as defense counsel argued, there is no evidence that Mr. Charles would have been motivated to flee from police in May 2021.

For all these reasons, I find that the Government has not proven Violation 1 by a preponderance of the evidence.

**Violation 2**

Mr. Charles was advised of the alleged violation, the maximum penalty, and his right to contest those violations. He stated that he had been given sufficient time to discuss his options with counsel and that he was fully satisfied with counsel's performance. He admitted using marijuana on or about June 25, 2021. After conducting this colloquy and observing his demeanor, I found he had freely, knowingly, and voluntarily admitted the one violation. Accordingly, it is recommended that the District Court accept Mr. Charles' admission, find that he violated his supervised release, and proceed to sentencing.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court:

1. Find that Mr. Charles did not violate his supervision as alleged in violation 1;

2. Find that Mr. Charles violated his supervised release as alleged in violation 2, that is, by using or possessing marijuana on or about June 25, 2021.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being

served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 31th day of January 2022.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE